# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| United States of America | ) |
| v. | ) Case No. 17-581 MJ |
| Allman Rivas | ) |
| USC | ) |
| *Defendant* | ) |

## CRIMINAL COMPLAINT

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief.

### Count 1:

On or about November 16, 2017, at or near Gila Bend, in the County of Maricopa, in the District of Arizona, Allman Rivas, knowing and with reckless disregard of the fact that a certain alien, Gonzalo Tepetzi-Rubi, had come to, entered, and remained in the United States in violation of law, did transport and move said alien within the United States by means of transportation and otherwise, in furtherance of such violation of law; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii).

**See Attached Statement of Probable Cause Incorporated By Reference Herein.**

REVIEWED BY: AUSA Jillian Besancon

_____
Signature of Complainant
Jimmy X. Cepeda
U.S. Border Patrol Agent

Sworn to before me and subscribed in my presence, this 17th day of November, 2017.

_____
Signature of Judicial Officer
Honorable Michelle H. Burns
United States Magistrate Judge

# STATEMENT OF PROBABLE CAUSE

I, Jimmy X. Cepeda, being duly sworn, hereby depose and state as follows:

1. Your affiant is a Border Patrol Agent with U.S. Border Patrol, U.S. Customs and Border Protection. I have learned about this investigation and the facts contained herein from direct participation in the investigation and from the reports and communications of other agents.

2. On November 16, 2017, Border Patrol Agent (BPA) Eric A. Millard was performing his assigned duties at the State Route 85 immigration checkpoint near Gila Bend, in Maricopa County, in the District of Arizona. At approximately 01:45 PM, a 2011 White Chevy Impala pulled into the primary inspection area.

3. BPA Millard identified himself as a U.S Border Patrol Agent and performed an immigration inspection of the occupants in the vehicle. BPA Millard observed four people in the vehicle, including three adults and one young child. BPA Millard directed the vehicle to the secondary inspection area in order to further his immigration inspection.

4. Once in secondary inspection, Supervisory BPA Benjamin Hyink and BPA Millard both approached the vehicle. BPA Millard requested identification from everyone in the vehicle. The driver, later identified as Allman Rivas, handed BPA Millard an Arizona Driver's License. The female passenger in the front seat handed BPA Millard an official Gila River Indian Community Tribal Membership Card.

5. BPA Millard then proceeded to the rear passenger-side door of the vehicle and

questioned the male passenger, later identified as Gonzalo Tepetzi-Rubi, as to his citizenship and asked him to provide a form of identification. Tepetzi-Rubi gestured to BPA Millard that he could not speak. Tepetzi-Rubi insinuated to BPA Millard that he could not speak due to a medical issue. During BPA Millard's attempt to determine Tepetzi-Rubi's citizenship, Rivas interjected stating that the male passenger was not able to answer any of his questions. Rivas told BPA Millard that Tepetzi-Rubi could not answer his questions, in either English or Spanish, because Tepetzi-Rubi was also a member of the Tohono O'odham Nation and only spoke the tribe's native language. Rivas went on to explain that he himself did not speak nor understand the tribe's native language, and therefore could not translate.

6. Following this, BPA Millard asked Gonzalo Tepetzi-Rubi to exit the vehicle in order to question him separately from the rest of the occupants in the vehicle. BPA Millard then asked Tepetzi-Rubi, in Spanish, if he could provide any form of identification. Tepetzi-Rubi then handed BPA Millard what appeared to be a Mexican Public Registration Form bearing the name "Tepetzi-Rubi, Gonzalo."

7. Tepetzi-Rubi told BPA Millard that he is a Mexican Citizen. BPA Millard asked Tepetzi-Rubi where he was born. Tepetzi-Rubi told BPA Millard he was born in Puebla, Mexico. BPA Millard asked Tepetzi-Rubi if he could provide a passport or permit allowing legal entry into the United States. Tepetzi-Rubi told BPA Millard he did not have any such document. BPA Millard then asked Tepetzi-Rubi if he had entered the United States by way of the Port of Entry or if he simply walked across the

border. Tepetzi-Rubi told BPA Millard he had simply walked across the border. At this point, Agent Millard asked Tepetzi-Rubi if he was in the United States illegally, to which Tepetzi-Rubi replied "Yes."

8. At this time, all the adult occupants in the vehicle were placed under arrest and transported to the Ajo Border Patrol Station for further processing. At the Ajo Border Patrol Station, the individuals were read their Miranda Rights.

9. Allman Rivas freely and willingly acknowledged that he understood his rights and agreed to provide a statement without a lawyer present. Rivas stated that he knew Gonzalo Tepetzi-Rubi was not legally present in the United States. Rivas said he was contacted by an associate via cellphone. The associate asked Rivas if he wanted to make some money. Rivas stated he was offered $3000 U.S. dollars to transport Tepetzi-Rubi to Phoenix, minus a $200 finder's fee he would need to provide to the associate. Rivas stated that because he had fallen out of favor with the associate, he agreed to transport Tepetzi-Rubi to Phoenix.

10. The associate instructed Rivas to keep Tepetzi-Rubi's phone until they reached Phoenix. Rivas stated that the associate also instructed him to travel through Ajo, AZ. Rivas stated that Tepetzi-Rubi had slept on his couch in the living room overnight. Rivas said that they left his home around 10:00 or 11:00 AM. Rivas stated that he did not make any stops between his home and the immigration checkpoint. Rivas also admitted that he had transported an illegal alien once before for the same associate. However, Rivas said he was not able to complete that job because his car broke down.

11. Gonzalo Tepetzi-Rubi freely and willingly acknowledged that he understood his rights and agreed to provide a statement without a lawyer present. Tepetzi-Rubi stated that crossed into the United States illegally on November 11, 2017. Tepetzi-Rubi stated that he did not have any documentation to legally reside or remain in the United States. Tepetzi-Rubi said he made all his arrangements with someone in Mexico. Tepetzi-Rubi said he told he would have to pay $10,000 U.S. dollars in order to cross into the United States. Tepetzi-Rubi also said he was supposed to be provided with false documents but never received them.

12. Tepetzi-Rubi said he was taken in car near the U.S border and told to walk to a house with white metal walls. Tepetzi-Rubi then stated he was received by a male he had never met before at the house. Tepetzi-Rubi said that there was also a female and a small child living in the house as well. Tepetzi-Rubi said he spent one night at the house before leaving around 09:00 or 10:00 the following morning. Tepetzi-Rubi stated that he and the male, female and small child who were in the house all left in a vehicle together. Tepetzi-Rubi stated that he was sitting in the back of the vehicle with the small child, the male was driving, and the female was seated in the front passenger seat. Tepetzi-Rubi said he was given instructions to stay quiet when they arrived at the checkpoint.

13. Tepetzi-Rubi was shown two different photo line-ups and identified the female passenger as the woman he saw in the house and the front passenger in the vehicle. Tepetzi-Rubi also identified Allman Rivas as the man who received him when he

arrived at the home and the driver of the vehicle.

14. Based on the above-stated facts, your affiant submits that there is probable cause to believe that on or about November 16, 2017, at or near Gila Bend, in the County of Maricopa, in the District of Arizona, Allman Rivas, knowing and with reckless disregard of the fact that a certain alien, Gonzalo Tepetzi-Rubi, had come to, entered, and remained in the United States in violation of law, did transport and move said alien within the United States by means of transportation and otherwise, in furtherance of such violation of law; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii).

_____
Jimmy X. Cepeda
U.S. Border Patrol Agent

Sworn to before me and signed in my presence
The 17th day of November, 2017.

_____
Michelle H. Burns
United States Magistrate Judge

6